IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT C. JACKSON and MAGNOVO TRAINING GROUP, LLC | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| V. | ) ) | Case No. 1:17-cv-1049 |
| THE LEADER'S INSTITUTE, LLC and DOUG STANEART | ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' COMPLAINT FOR DAMAGES

Plaintiffs, Robert C. Jackson ("Jackson") and Magnovo Training Group, LLC ("Magnovo") (collectively "Plaintiffs"), file this Complaint against Defendants, The Leader's Institute, LLC ("TLI") and Doug Staneart ("Staneart") (collectively "Defendants"), showing in support as follows:

### I.    SUMMARY

1.    Jackson formerly worked with TLI and Staneart in what Defendants state was an independent contractor relationship. Jackson's home base of operations when working for Defendants was in Indianapolis, Indiana.

2.    After ending his working relationship with TLI in approximately August 2013, Jackson and his company, Magnovo, engaged in business operations generally involving leadership development, team building, and communications development for various business entities.

3.     Plaintiffs and Defendants are competitors in the same business industry. Plaintiffs primarily rely on internet presence to attract and/or retain customers. On information and belief, Defendants also primarily rely on internet presence to attract and/or retain customers.

4.     Defendants are and have been using Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance without his permission or consent. Such use included, and continues to include, publication of Jackson's photographs, including publication of the same on TLI's website, Twitter page, and Facebook page. The publication of those photos gives the false and misleading appearance and representation that Jackson is currently an employee of and/or otherwise works with TLI, and/or that Jackson and/or Magnovo endorse the goods, products, and/or services of Defendants.

5.     Additionally, Defendants published, and continue to publish, videos of Jackson speaking on TLI's webpage and on YouTube. The publication of those videos gives the false and misleading appearance and representation that Jackson is currently an employee of and/or otherwise works with TLI, and/or that Jackson and/or Magnovo endorse the goods, products, and/or services of Defendants.

6.     Furthermore, Defendants published and continue to publish false statements that Jackson is an instructor for TLI on TLI's website and social media. The publication of the same gives the false and misleading appearance that Jackson is currently an employee and/or otherwise works with TLI, and/or that Jackson and/or Magnovo endorse the goods, products, and/or services of Defendants.

7.     The aforementioned publications, advertisements, statements, and/or representations of Defendants use Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance without Jackson's and/or Magnovo's permission or consent. Furthermore,

those publications, statements, and/or representations falsely state and/or represent to the public, including actual and/or potential customers of Plaintiffs and/or Defendants, that Jackson, as recently as March 30, 2017, was an instructor for TLI, or otherwise worked for, was affiliated with, and/or endorsed the products, goods and/or services of TLI and/or Staneart.

8.      Additionally, much of the conduct complained of in this lawsuit occurred after a TLI and Staneart settled a federal Fair Labor Standards Act ("FLSA") brought against them by Jackson. Such conduct of Defendants was in violation of the FLSA's anti-retaliation provision.

9.      Defendants' conduct has caused, and continues to cause, Jackson and/or Magnovo damages. Accordingly, Jackson and/or Magnovo bring claims against Defendants in this lawsuit for:

      a. Violations of the Lanham Act;

      b. Violations of Indiana Common Law Relative to Invasion of Privacy for Misappropriation of Name or Likeness;

      c.  Unfair Competition;

      d. Violations of the Indiana Right to Publicity Statute; and

      e. Violations of the FLSA's anti-retaliation provision.

10.     Jackson and/or Magnovo seek all damages available to them pursuant to the foregoing claims in addition to all other relief to which the Court deems they are entitled based on the facts of this case.

## II.      THE PARTIES, JURISDICTION AND VENUE

### A.      Plaintiff Robert Jackson

11.     Plaintiff Jackson is a natural person who resides in Indianapolis, Marion County, Indiana. He has standing to file this lawsuit.

B.    **Magnovo Training Group, LLC**

12.    Magnovo is an Indiana limited liability company. Its principle place of business is in Indianapolis, Indiana. Magnovo has standing to file this lawsuit.

13.    Jackson is the owner and president of Magnovo.

14.    Magnovo generally engages in business operations related to leadership development, team building, and communications development. Its customers are primarily business entities that utilize the aforementioned services to improve their respective employees' skills, abilities, and work performance.

C.    **Defendant The Leader's Institute, LLC**

15.    On information and belief, Defendant TLI is a Texas limited liability company incorporated under the laws of the State of Texas.

16.    TLI represents to the public that its current corporate office is 5430 LBJ Freeway, Suite 1200, Dallas, Texas 75240.

17.    TLI's website states that TLI is:

> [A] fun team building company and one of the fastest growing training companies in the world! We offer fun group events and activities to build teamwork, but we are also know for our corporate seminars such as public speaking classes and leadership development courses. Your group will have an absolute blast when one of our certified instructors helps them discover that they work more efficiently when they work together. In addition, the Fearless Presentations® public speaking class helps participants eliminate the fear of public speaking. Finally, our leadership training classes and seminars help Fortune 500 companies build strong management throughout their organizations. The institute also offers turn-key breakout sessions and world-famous keynote speakers for conventions and corporate meetings.

http://www.leadersinstitute.com/ (Accessed April 4, 2017).

18.     TLI admits that it operates several business locations throughout the United States, including Indianapolis, Indiana. *See* http://www.leadersinstitute.com/team-building/midwest-region (Accessed April 4, 2017). For example, TLI's aforementioned website states that TLI has a place of business at 201 N Illinois St., #1600, Indianapolis, IN 46204 with a phone number of (317) 608-6554. *Id.*

19.     During all times relevant to this lawsuit, TLI has done business in the State of Indiana. In addition to its express admission on its website that it conducts business operation in Indiana, and has a place of business in Indiana, its "clients" section on its website lists "some" of TLI's customers. http://www.leadersinstitute.com/. (Accessed April 4, 2017). The partial listing of TLI's customers includes Zimmer, now known as Zimmer Biomet, which is an assumed named for the for-profit Indiana domestic corporation Biomet, Inc. Zimmer a/k/a Zimmer Biomet and Biomet, Inc. has its principal place of business in Warsaw, Indiana. At all times relevant to this lawsuit. Zimmer had its principal place of business in Warsaw, Indiana.

20.     During the several continuous years that Jackson previously worked with TLI, which ended in approximately August 2013, his home base of operations for TLI was in Indianapolis, Indiana. Remuneration for Jackson's services was sent to him in Indiana by Defendants.

21.     The advertisements, statements, publications, and/or representations of Defendants made the subject matter of this lawsuit include photos and/or videos of Jackson when Jackson worked with Defendants and had his home base in Indianapolis, Indiana. Furthermore, the false statement that Jackson is still a trainer, presenter, employee, or other worker of TLI in the advertisements, statements, publications, and/or representations made the subject matter of

this lawsuit falsely state or represent that Jackson's prior work with Defendants, where his home base of operations was in Indianapolis, Indiana, is ongoing.

22.     TLI engaged in, and continues to engage in, continuous and systematic contacts within Indiana. Furthermore, TLI purposefully availed itself, and continues to purposefully avail itself to the privilege of conducting business and other activities in Indiana, and thus invoked the benefits and protections of the laws of the State of Indiana.

23.     TLI may be served with summons by serving its registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**D.      Defendant Doug Staneart**

24.     Plaintiffs incorporate by reference herein the allegations set forth in the preceding section relative to TLI.

25.     Defendant Staneart is a natural person.

26.     Staneart is the president, chief executive officer, and managing officer of TLI.

27.     On information and belief, Staneart is the sole owner of TLI.

28.     At all times relevant, Staneart has had operational control over TLI's business operations, including its advertisements, website content and publication, Twitter postings, Facebook postings, and/or YouTube postings.

29.     At all times relevant, and as an owner and managing officer of TLI, Staneart is/was active in the daily business operations of TLI and has/had responsibility for TLI's advertisements, statements and/or representations on its website, Twitter page, Facebook page, YouTube and all other related internet and/or social media programs and advertising.

30.     As an owner and officer of TLI, Staneart regularly and routinely engaged in business operations in Indiana during time periods relevant to this lawsuit.

31.     Staneart, along with TLI, was sued for alleged violations of the FLSA on February 10, 2014 by Jackson. That lawsuit was styled *Robert Jackson, et al. v. The Leader's Institute, LLC and Doug Staneart*; Case No. 1:14-cv-193-TWP-DML; In the United States District Court for the Southern District of Indiana, Indianapolis Division (the "FLSA Lawsuit"). The FLSA Lawsuit was settled on or about April 11, 2016 and dismissed on or about April 19, 2016. During the over two year period that the FLSA Lawsuit was pending, Staneart, on behalf of himself and TLI, engaged in business operations with two different Indianapolis, Indiana law firms, did not contest jurisdiction over Defendants by the United States District Court for the Southern District of Indiana, and personally appeared in Indiana on numerous occasions, including, but not limited to, several days of depositions of the parties in that FLSA Lawsuit, including three days of deposition of Staneart himself.

32.     Staneart, on behalf of himself and TLI, had, and continues to have, continuous and systematic contacts within Indiana. Staneart, on behalf of himself and TLI, purposefully availed, and continues to purposefully avail, Defendants to the privilege of conducting business and other activities in Indiana, and thus invoked the benefits and protections of the laws of Indiana.

33.     Staneart may be served with summons at 6703 Coronation Court, Arlington, Texas, 76017-4965.

**E.     Jurisdiction and Venue**

34.     Plaintiffs incorporate by reference herein the allegations set forth in the preceding sections relative to TLI and Staneart in addition to the factual section set forth in Section III below.

35.     The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

36.     During all times relevant to this lawsuit, and as stated in detail elsewhere in this complaint, Defendants have done business in the State of Indiana and continue to do business in the State of Indiana. At all times relevant, Defendants had, and continue to have, continuous and systematic contacts within Indiana. Indeed, TLI's website confirms the same by currently listing its Indiana place of business as 201 N Illinois St #1600, Indianapolis, Indiana 46204, Phone: (317) 608-6554. http://www.leadersinstitute.com/team-building/midwest-region (Accessed March 31, 2017). Furthermore, that TLI website identifies one or more specific Indiana businesses in the partial list of Defendants' customers in addition to advertising that it does business operations in Indiana.

37.     At all times relevant, TLI and Staneart have purposefully directed their business activities at or within the State of Indiana, have availed themselves to the privilege of conducting business and other activities in the State of Indiana, and have thus invoked the benefits and protections of the laws of the State of Indiana. Furthermore, the advertisements, statements, publications, and/or representations of Defendants made the subject matter of this lawsuit include photos and/or videos of Jackson when Jackson worked with Defendants and had his home base in Indianapolis, Indiana. Indeed, some of the subject videos of Jackson were made in the State of Indiana. Furthermore, the statement that Jackson is still a trainer, presenter, employee, or other worker of TLI in the advertisements, statements, publications, and/or representations made the subject matter of this lawsuit falsely state and/or represent that Jackson's prior work with Defendants, where his home base of operations was in Indianapolis, Indiana, is ongoing. At all times material to this lawsuit, Defendants had, and continue to have,

sufficient minimum contacts with Indiana and the assertion of jurisdiction over them by this Court does not offend traditional notions of fair play and substantial justice.

38.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the Lanham Act and the FLSA. Furthermore, the Lanham Act provides that federal district courts shall have original jurisdiction of claims brought pursuant thereto. 15 U.S.C. § 1121(a).

39.     The Court has supplemental jurisdiction over the Indiana state law claims pursuant to 28 U.S.C. § 1367. The Lanham Act claim and the Indiana state law claims are related as they are premised on the same false, misleading, and unauthorized actions, representations, statements, and/or advertisements of Defendants. Furthermore, the facts relative to same form a part of the same case or controversy under Article III of the United States Constitution.

40.     Venue is proper in the Indianapolis Division of the United States District Court for the Southern District of Indiana because, when Defendants utilized Jackson's services in their business operations, Jackson's home base of operations was in this Judicial Division and District, and a substantial part of the events giving rise to the claims in this lawsuit occurred, in whole or in part, in this Judicial Division and District. Furthermore, as identified above, TLI's website states that it currently maintains a place of business in Indianapolis, Indiana. *See* http://www.leadersinstitute.com/team-building/midwest-region (Last accessed March 31, 2017). Finally, the FLSA retaliation claims herein derive from the FLSA Lawsuit in this Judicial Division and District.

### III.     FACTUAL BACKGROUND

41.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

42.     Jackson formerly worked with TLI and Staneart in what Defendants labeled as an independent contractor relationship. During that time, Jackson's home base of operations with Defendants was in Indianapolis, Indiana. Jackson's work with Defendants ended in approximately August 2013.

43.     Thereafter, Jackson filed the FLSA Lawsuit in the United States District Court for the Southern District of Indiana alleging violation of the FLSA's overtime wage provisions. In the FLSA Lawsuit, Defendants denied any liability, contending that Jackson was an independent contractor who was, at all times, in business for himself. In that FLSA lawsuit, Staneart admitted that Jackson's principal work location was in Indianapolis, Indiana. Defendants did not contest jurisdiction over them by this Court in the FLSA Lawsuit, and that lawsuit was settled on April 11, 2016 and then dismissed on or about April 19, 2016.

44.     After the FLSA Lawsuit was dismissed, Staneart and/or TLI engaged and/or continued to engage in activities to retaliate against Jackson for filing the FLSA Lawsuit. Indeed, Staneart has admitted that he engaged in wrongful conduct against Plaintiffs because he was "mad" and "angry" about the FLSA Lawsuit. The present lawsuit is limited to conduct occurring after the date of the settlement of the FLSA Lawsuit – April 11, 2016.

45.     For example, Staneart, acting individually and/or on behalf of TLI, content scraped, framed, mirrored, copied, and reposted Magnovo website data and proprietary photos from Magnovo websites www.charity-team-building-events.com and www.charity-team-building-events.com/photos. Staneart and/or TLI then caused that Magnovo website content and proprietary data to be displayed and/or published on websites with confusingly similar domain names as Magnovo's, including www.charityteambuildingevent.com and www.charityteambuildingevent.com/photos. All such misleadingly similar, fake, and/or

fraudulent websites were owned, controlled, maintained, and/or operated by Staneart and/or TLI. Staneart's and/or TLI's actions relative to same had not proper business purpose, were intentional, malicious, and made in bad faith. Jackson discovered the foregoing activity on or about July 26, 2016 and, through his counsel, immediately sent a cease and desist letter to attorneys known to represent Staneart and TLI. After sending that cease and desist letter, the www.charityteambuildingevent.com website was changed and redirected those accessing it to a TLI website and the www.charityteambuildingevent.com/photos website was changed and redirected those accessing that website to a TLI website which stated, amongst other things, "Error 404 – Not Found." Clearly, Staneart and TLI were behind those misleadingly similar, fake, and/or fraudulent websites.

46.     Furthermore, Staneart made accusations and false statements to the United States Department of Justice ("DOJ") and the United States Federal Bureau of Investigation ("FBI") in an effort to convince the DOJ to prosecute Jackson. All such communications, statements, and actions made by Staneart relative to the DOJ and/or FBI were in bad faith and were further retaliation for Jackson filing the FLSA Lawsuit. On approximately December 6, 2016, and despite Staneart's extensive efforts to get Jackson prosecuted for anything he could conjure, the Assistant United States Attorney, which had reviewed Staneart's accusations against Jackson, including sworn statements, stated that no legal action was being taken against Jackson. This is further evidence of Staneart's malicious conduct and bad motives relative to Plaintiffs.

47.     During the time period that Jackson had a working relationship with Defendants he primarily worked as a trainer or presenter, which are synonymous terms. Several photos of Jackson were made relative to his work with TLI. Jackson also did some video work during that time period which included videos of himself performing his trainer/presenter skillset. Those

videos, as explained below, are part of the basis of this lawsuit, and most, if not all of them were made in Indiana with Jackson using his own unique presentation skills and experiences for same. Those videos contain Jackson's image, name, distinctive appearance, and voice.

48. After ending the working relationship with Defendants in approximately August 2013, Jackson and his company, Magnovo, engaged in business operations generally involving leadership development, team building, and communications development for various business entities. Plaintiffs' ability to attract and retain customers is heavily reliant on their Internet presence and advertising, including the Magnovo webpage and social media. Jackson is the primary instructor/presenter for Magnovo relative to Magnovo's services and/or products provided to customers. Jackson is accomplished, famous, and/or well known in his line of work, is a published author relative to his line of work.

49. Magnovo and TLI are competitors in the same industry, which is a small industry. Moreover, many of the same prospective customers review Magnovo and TLI internet-based content, such as websites and social media, in making decisions on obtaining or retaining the services, goods, and/or products of one company or the other. On information and belief, like Plaintiffs, Defendants also rely on an Internet presence to attract and/or retain customers. As such, false and/or misleading statements, representations, and/or advertisements by Defendants that Jackson works for TLI, that Jackson's services are done for TLI, and/or that Jackson and/or Magnovo endorse the products, goods, and/or services of TLI, present a significant risk for harm to Plaintiffs' business operations and otherwise cause and/or have the potential to cause damage to Plaintiffs' business operations.

50. Defendants are and have been using Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance without his and/or Magnovo's permission or consent.

Such use includes publication of photos and videos of Jackson on TLI's website, TLI's Twitter page, TLI's Facebook page, and on YouTube. Furthermore, TLI falsely represents, advertises, and/or states that Jackson is/was working for TLI as recently as March 31, 2017 via its website and March 8, 2017 via its Twitter feed and Facebook page. Defendants also have videos on YouTube and the TLI website of Jackson which falsely represent and/or state that Jackson is currently working with Defendants and/or that Jackson and/or Magnovo endorse the goods, products and/or services of Defendants. The following are examples of Defendants' conduct.

51.    As of April 4, 2017, TLI's website falsely states that Jackson is an instructor for Defendants'      Fearless      Presentations®      Public      Speaking      Class.    *See* http://www.leadersinstitute.com/video-stories-make-your-presentations-more-memorable/ (Accessed April 4, 2017). The following is a screenshot of the aforementioned website link showing TLI not only using Jackson's likeness, voice, distinctive appearance, and image, but also falsely representing/stating that Jackson is an "instructor" for TLI's Fearless Presentations® Public Speaking Class:



52. Similarly, in connection with a TLI business event in Indianapolis, Indiana, TLI's website currently shows a picture containing Jackson which is used to advertise and further Defendants' business operations. That website improperly uses Jackson's likeness, image, and photograph. *See* http://www.leadersinstitute.com/memorable-fearless-presentations-workshop-follows-the-super-bowl-in-indianapolis-indiana/ (Accessed April 4, 2017). A screenshot of that webpage is below:



Jackson is shown in the bottom of that photo wearing a blue shirt. In addition to Plaintiffs not authorizing Defendants to use that image of Jackson, the TLI statements on that webpage, while also using Jackson's image and likeness, give the false and misleading representation to the public, including actual and/or potential customers of Plaintiffs and/or Defendants, that Jackson is involved with TLI's Fearless Presentation program when he is not, and has not been for

several years. That webpage also makes the false and misleading representation that Jackson and/or Magnovo endorse the goods, products, and or services of Defendants.

53.     Defendants have also recently used Jackson's likeness, photo, and image without Jackson's and/or Magnovo's consent in connection with posts on TLI's Twitter page relative to TLI's business operations. For example, the following is a screenshot of TLI's Twitter posting on or about March 8, 2017 which contains a photo that includes Jackson in addition to falsely holding out Jackson as an employee, instructor, or other worker for TLI:



Jackson is located in the bottom right hand corner of that photo wearing a blue suit, white shirt, and red tie. Jackson and/or Magnovo did not consent to the use of Jackson's likeness and image,

or representation/statement that Jackson is an employee, instructor, or other worker with TLI, that Jackson performs services for Defendants, or that Jackson endorses the goods, products, and/or services of Defendants. That Twitter post and photograph falsely and misleadingly represent to the public, including actual and/or potential customers of Plaintiffs and/or Defendants, that Jackson, as of March 8, 2017, was a part of TLI's Behavioral Change Team Building program and/or endorses TLI's Behavioral Change Team Building program.

54.     The same photo is also published on TLI's webpage relative to "Behavioral Change Team Building" as of April 4, 2017. http://www.leadersinstitute.com/behavioral-change-team-building/?utm_source=dlvr.it&utm_medium=twitter (Accessed April 4, 2017). Again, Plaintiffs do not and did not consent to the use of Jackson's photo, likeness and image, or representation/statement that Jackson is an employee, instructor, or other worker with TLI. Similarly, Plaintiffs do not endorse Defendants' goods, products, and/or services as that webpage falsely represents. A screenshot of that TLI website showing same is below:



55.     The same photo of Jackson in the foregoing Twitter post and TLI website page was also recently published by TLI on its Facebook page. Plaintiffs do not and did not consent to the use of Jackson's photo, likeness, and image on TLI's Facebook page, representation/statement that Jackson is an employee, instructor, or other worker with TLI, that Jackson performs services for TLI, and/or that Plaintiffs endorse the goods, products, and/or services of Defendants.

56.     A screenshot for that TLI Facebook page from March 8, 2017 is below:



The photo including Jackson is listed in the section titled "Behavioral Change Team Building." That TLI Facebook post and photograph falsely and misleadingly represent to the public, including actual and/or potential customers of Plaintiffs and/or Defendants, that Jackson, as of March 8, 2017, was a part of TLI's Behavioral Change Team Building program in connection with TLI's Fearless Presentations program and/or that Jackson and/or Magnovo endorse the goods, products, and/or services of Defendants relative to that program.

57.     Moreover, TLI published, and continues to publish, numerous videos of Jackson on YouTube in addition to the TLI website which contain Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance without Jackson's and/or Magnovo's consent. Defendants' publication of same falsely and/or misleadingly represents and/or states that Jackson is current employee, instructor, or other worker of TLI, that Jackson performs services for TLI, and/or that Jackson and/or Magnovo endorse the goods, products, and/or services of Defendants. Most, if not all of the subject videos were filmed in the State of Indiana with Jackson using his unique presentation skills, experiences, voice, image, and distinctive appearance for same during the time period that Defendants contend Jackson was working for them as an independent contractor. Defendants do not and did not have Jackson's and/or Magnovo's permission to use Jackson's presentation skills, experiences, voice, image, and distinctive appearance for Defendants' commercial benefit or any other purpose after the end of the working relationship in August 2013. The following screenshot is an example of those improper YouTube videos published by Defendants:



58.     Jackson has not worked with Defendants for almost four years, yet Defendants currently use Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance on TLI's website and on YouTube as shown *supra*, and as recently as March 8, 2017, used Jackson's likeness, photo, image and/or name, on the TLI Twitter feed and Facebook page. Jackson and/or Magnovo do not and did not consent to Defendants' use of Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance for any purpose by TLI and/or Staneart in the time following the end of the working relationship with Defendants in approximately August 2013. Jackson and/or Magnovo do not and did not consent to TLI and/or Staneart stating and/or representing on their webpage, social media accounts, and YouTube, that Jackson is a current and/or recent employee, instructor, or other worker of TLI, or that he otherwise had any affiliation/association with Defendants' and/or their business operations after the end of the working relationship in approximately August 2013. Defendants' advertisements, statements, publications, and/or representations to the public, including actual and/or potential customers of Plaintiffs and Defendants, that Jackson still works with TLI, that Jackson is an "instructor" for TLI's Fearless Presentations® Public Speaking Class and Behavioral Change Team Building program, and/or that Plaintiffs endorse and/or associate with products, goods, and/or services of Defendants are false, unauthorized, and misleading. Furthermore, such advertisements, statements, publications, and/or representations have the potential to cause confusion amongst actual and/or potential customers of Plaintiffs thereby resulting in loss of business by Plaintiffs. Additionally, Defendants have no right to make those advertisements, statements, publications, and/or representations to boost or attempt to boost TLI's business operations or to obtain or retain prospective customers.

59.     Given the heavy reliance on internet and social media presence to attract and/or retain customers in this area of business operations in which Plaintiffs and Defendants are direct competitors, Defendants have intentionally and/or impermissibly used Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance, and have falsely represented that Jackson is a current employee, instructor, presenter, and/or worker of TLI's in order to promote their business operations and/or to diminish Plaintiffs' business operations. In fact, Staneart agrees that Jackson is an "excellent presenter," which is synonymous with instructor, and that provides one explanation of Defendants' motive to falsely advertise/represent to the public, including potential or actual customers of Defendants, that Jackson works with TLI, that Jackson performs services for TLI, and/or that Plaintiffs endorse the goods, products, and/or services of Defendants.

60.     As noted in TLI's website, it engages in business operations in Indiana. As such, Defendants' unauthorized use and/or publication of Jackson's name, likeness, and/or image, and Defendants' false statements and/or representations regarding any current and/or recent affiliation of Jackson with TLI via the TLI Webpage, TLI Twitter feed, TLI Facebook page and/or YouTube are made and/or intended to be made, to actual and/or prospective customers in Indiana.

### IV.     CAUSES OF ACTION

61.     All conditions precedent to this suit, if any, have been fulfilled.

### A.     Count 1 – Lanham Act Violations

62.     Plaintiffs incorporate the preceding sections by reference as if set forth fully herein. This cause of action is asserted by Plaintiffs against Defendants.

63.     In relevant part, the Lanham Act states:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Lanham Act also contains a Cyberpiracy Prevention cause of action, which provides:

**Cyberpiracy Prevention**

(A)  A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

    (i)   has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

    (ii)  registers, traffics in, or uses a domain name that—

        (I)   in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

        (II)  in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

        (III)  is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

(B)

(i)  In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

(I)   the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)   the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)   the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)   the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)   the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)   the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(A)&(B).

64.     "As the Seventh Circuit explains, one bases of liability under the Lanham Act includes false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device." *Maremont v. Susan Fredman Design Grp., Ltd.*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011) (*citing* L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir.1993)). "False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Maremont*, 772 F. Supp. 2d at 971 (citing *Stayart v. Yahoo! Inc.*, 651 F.Supp.2d 873, 880–81 (E.D.Wis.2009)) (noting that "popularity or celebrity not necessary to bring false endorsement claim."). "[A] false endorsement claim based on the unauthorized use of a [person's] identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.*, a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Maremont*, 772 F. Supp. 2d at 971 (citing *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir.1992)).

65.     As described in detail *supra*, TLI and/or Staneart have engaged, and continue to engage, in the unauthorized use and/or publication of Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance on the TLI Webpage, TLI Twitter feed, TLI Facebook page and/or YouTube relative advertisement of Defendants' goods and/or services. Additionally, Defendants made, and continue to make, false statements and/or representations regarding current and/or recent work and/or affiliation of Jackson with TLI and/or Plaintiffs' endorsement of TLI's goods and/or services via the TLI Webpage, TLI Twitter feed, TLI Facebook page and/or YouTube.

66.     Defendants have used, and continue to use, Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance in connection with Defendants' products, goods, and/or services in such a way that consumers are likely to be misled about Jackson's and/or Magnovo's sponsorship and/or approval those products, goods and/or services.

67.     Defendants have made, and continue to make, false representations concerning the origin, association, and/or endorsement TLI's and/or Staneart's goods and/or services through the wrongful use of Jackson's and/or Magnovo's distinctive mark, name, and/or trade.

68.     Defendants have made, and continue to make, false endorsements and/or association claims by using Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance in connection with Defendants products, goods and/or services in such a way that consumers are likely to be misled about Jackson's and/or Magnovo's sponsorship and/or approval of those goods, products, and/or services.

69.     Defendants have made, and continue to make, false endorsements/association claims stating and/or representing that Jackson is a trainer, instructor, and/or employee of TLI, and/or that Jackson otherwise works with TLI relative to goods, products, and/or services of Defendants in such a way that consumers are likely to be misled about that Jackson's and/or Magnovo's sponsorship, endorsement, and/or approval of those products, goods, and/or services.

70.     The aforementioned advertisements, statements, publications, and/or representations of Defendants are likely to mislead consumers about the products, goods, and/or services offered and/or provided by Jackson and/or Magnovo.

71.     In further violation of the Lanham Act, Staneart, acting individually and/or on behalf of TLI, engaged in false advertising when he content scraped, framed, mirrored, copied, and reposted Magnovo website data and proprietary photos from Magnovo websites

www.charity-team-building-events.com and www.charity-team-building-events.com/photos. Staneart and/or TLI then caused that Magnovo website content and proprietary data to be displayed and/or published on websites with similar domain names as Magnovo's, including www.charityteambuildingevent.com and www.charityteambuildingevent.com/photos. To potential customers and all other viewers, the website content appeared to be Magnovo's, but, on information and belief, individuals/prospective customers who clicked to contact Magnovo through those false and/or misleading websites were instead redirected to Staneart and/or TLI. All such misleading, false, and/or fraudulent websites were owned, controlled, maintained, and/or operated by Staneart and/or TLI. Jackson discovered the foregoing activity on or about July 26, 2016. Immediately thereafter, and through their counsel, Plaintiffs sent a cease and desist letter to attorneys known to represent Staneart and TLI. Soon after sending that cease and desist letter, the www.charityteambuildingevent.com website redirected those accessing it to a TLI website and the www.charityteambuildingevent.com/photos website redirected those accessing that website to a TLI website which stated, amongst other things, "Error 404 – Not Found." Clearly, Staneart and TLI were behind that wrongful, misleading, false, and/or fraudulent conduct.

72.     Based on the foregoing, Staneart and/or TLI, in connection with goods and/or services, used in commerce words, terms, names, symbols, and/or devices and/or false designations of origin, false and/or misleading descriptions of fact, and/or false and/or misleading representations of fact, which were likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Jackson and Magnovo, on the one hand, with Staneart and TLI, on the other hand, and vice-versa.

73.     Based on the foregoing, Staneart and/or TLI, in connection with goods and/or services, used in commerce words, terms, names, symbols, and/or devices and/or false designations of origin, false and/or misleading descriptions of fact, and/or false and/or misleading representations of fact, which deceived and/or were likely to deceive others, including customers and/or prospective customers of Plaintiffs and/or Defendants, as to the origin, sponsorship, or approval of Defendants' goods, services, and/or commercial activities by Jackson and/or Magnovo.

74.     Based on the foregoing, Staneart and/or TLI, in connection with goods and/or services, used in commerce words, terms, names, symbols, and/or devices and/or false designations of origin, false and/or misleading descriptions of fact, and/or false and/or misleading representations of fact, which in commercial advertising and/or promotion, misrepresented the nature, characteristics, and/or qualities of Jackson's and/or Magnovo's goods, services, and/or commercial activities.

75.     Based on the foregoing, Staneart and/or TLI, in connection with goods and/or services, used in commerce words, terms, names, symbols, and/or devices and/or false designations of origin, false and/or misleading descriptions of fact, and/or false and/or misleading representations of fact, which in commercial advertising and/or promotion, misrepresented the nature, characteristics, qualities, Staneart's and/or TLI's goods, services, or commercial activities.

76.     Plaintiffs believe that they are and will be damaged and/or are and will likely be damaged as a result of Defendants' violation(s) of the Lanham Act.

77.     In further violation of the Lanham Act, Staneart and/or TLI had a bad faith intent to profit from Magnovo's and/or Jackson's mark(s) and/or name(s), and registered, trafficked in, and/or used domain name(s) that:

    a.   at the time of the registration of the domain name(s) by Staneart and/or TLI, was/were identical or confusingly similar to Jackson's and/or Magnovo's distinctive mark(s); and/or

    b.   at the time of the registration of the domain name(s) by Staneart and/or TLI, was/were identical or confusingly similar to Jackson's and/or Magnovo's famous mark(s) which was/were famous at the time of registration.

78.     In connection with misleadingly and/or confusingly similar domain name(s) to which Staneart and/or TLI content scraped, framed, mirrored, copied, and/or reposted Jackson and/or Magnovo website data and proprietary data and/or photos from Magnovo website(s), Staneart and/or TLI intended to divert customers from Jackson's and/or Magnovo's online location(s) to a site or sites accessible under Staneart's and/or TLI's domain name(s) that could harm the goodwill represented by Magnovo's and/or Jackson's mark(s), either for commercial gain and/or with the intent to tarnish and/or disparage Jackson's and/or Magnovo's mark(s), by creating a likelihood of confusion as to the source, sponsorship, affiliation, and/or endorsement of the site(s). Other conduct by Defendants as described in this complaint and to be shown in evidence in this lawsuit further supports a finding of bad faith by Staneart and/or TLI relative to the Lanham Act's Cyberpiracy Prevention provisions.

79.     Plaintiffs seek all damages available for this cause of action, including, but not limited to, injunctive relief.

**B.** **Count 2 – Violations of Indiana Common Law Relative to Invasion of Privacy for Misappropriation of Name or Likeness**

80.　Plaintiffs incorporate the preceding sections by reference as if set forth fully herein. This cause of action is asserted by Jackson against Defendants.

81.　Indiana common law recognizes an invasion of privacy claim for misappropriation of an individual's name or likeness. *Felsher v. University of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001). A person's name or likeness "embraces the concept of a person's character, which is legally protected against appropriation by another for his own use or benefit." *Id.* at 601. Furthermore, "under Indiana law, the unauthorized use of photographs of a person for commercial purposes is an invasion of his right of privacy and is actionable." *Time Inc. v. Sand Creek Partners, L.P.*, 825 F. Supp. 210, 212 (S.D. Ind. 1993).

82.　Jackson's name and likeness is a property right belonging to him. As described in detail *supra*, Defendants invaded Jackson's privacy by publishing, and continuing to publish his name and/or likeness, including photos and videos of Jackson, through the TLI website, TLI Twitter feed, TLI Facebook Page, and YouTube after the end of the working relationship between Jackson and Defendants in 2013, which Defendants repeatedly contended was an independent contractor relationship. Jackson's name and likeness is legally protected from Defendants' appropriation of same and Jackson does not and did not consent to use of same by Defendants as complained of herein. Furthermore, Defendants' unauthorized use of photos and videos of Jackson were used by Defendants for a commercial purpose, and constitute an invasion of his right to privacy.

83.　Jackson has suffered, and continues to suffer, damages as a result of Defendants' violation(s) of Indiana Common Law relative to Invasion of Privacy for Misappropriation of Name or Likeness.

84.     Jackson seeks all damages available for this cause of action.

## C.     Count 3 – Unfair Competition

85.     Plaintiffs incorporate the preceding sections by reference as if set forth fully herein. This cause of action is asserted by Plaintiffs against Defendants.

86.     "[A] cause of action for unfair competition arises when there is any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off goods or business of one person as and for that of another." *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011) (citing *Felsher,* 755 N.E.2d at 598).

87.     "Unfair competition ... does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values." *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 3:08-CV-490-AS-CAN, 2009 WL 418079, at *4 (N.D. Ind. Feb. 18, 2009) (citing *Felsher,* 755 N.E.2d at 598).

88.     The probable tendency and effect Defendants' improper and misleading use of Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance, and/or false statements or representations that Jackson is currently working with TLI or performing services for TLI, has the natural and probable tendency and effect to deceive the public so as to pass off goods or business of Jackson as that of Defendants and/or to deceive the public so as to give the false impression that Plaintiffs endorse the goods, products, and/or services of Defendants. As explained in detail *supra*, Plaintiffs and Defendants are direct competitors in in the same

industry, and Plaintiffs and Defendant each rely on internet and social media based advertising to attract and retain customers.

89. Jackson is accomplished, famous, and/or well known in his line of work, is a published author relative to his line of work, and is "excellent" in his line of work according to Staneart. Defendants' use of Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance has the natural and probable tendency and effect to deceive the public, including customers and/or prospective customers of Plaintiffs and Defendants, so as to pass off Jackson's and/or Magnovo's business as that of Defendants.

90. Defendants' unauthorized use Jackson's name, voice, photograph, image, likeness, and/or distinctive appearance were used by Defendants for a commercial purpose, and further constitute unfair competition.

91. Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' unfair competition.

92. Plaintiffs seek all damages available for this cause of action.

**D.** **Count 4 – Violations of the Indiana Right to Publicity Statute**

93. Plaintiffs incorporate the preceding sections by reference as if set forth fully herein. This cause of action is asserted by Plaintiffs against Defendants.

94. Pursuant to the Indiana Rights of Publicity Statute, "[a] person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written consent from a person specified in section 17 of this chapter." Ind. Code Ann. § 32-36-1-8.

95.     As used in that statute, "personality means a living or deceased natural person whose: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gesture; or (9) mannerisms; has commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose during the person's lifetime. Ind. Code Ann. § 32-36-1-6.

96.     As used in that statute "right of publicity" means a personality's property interest in the personality's: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gestures; or (9) mannerisms. Ind. Code Ann. § 32-36-1-7.

97.     As used in that statute, "person" means a natural person, a partnership, a firm, a corporation, or an unincorporated association. Ind. Code Ann. § 32-36-1-5.

98.     Violations of the Indiana Rights of Publicity provide damages including statutory or actual damages, treble or punitive damages, as elected by a plaintiff, injunctive relief, legal fees, and costs. Ind. Code Ann. § 32-36-1-10 & § 32-36-1-12.

99.     As demonstrated above in detail, after the end of what Defendants state was an independent contractor relationship with Jackson in approximately August 2013, Defendants have used/published, and continued to use/publish, Jackson's name, voice (via the videos), photograph, image, likeness, and distinctive appearance, which have commercial value, for a commercial purpose without obtaining Jackson's and/or Magnovo's written consent for same. Jackson is living as of the filing of this complaint.

100.    Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' violation(s) of the Indiana Rights of Publicity Statute.

101.    Plaintiffs seek all damages available for this cause of action.

**E.     Count 5 – Violations of the FLSA's Anti-Retaliation Provision**

102.    Plaintiffs incorporate the preceding sections by reference as if set forth fully herein. This cause of action is asserted by Jackson against Defendants.

103.    After the settlement and dismissal of the FLSA lawsuit in April 2016, Defendants engaged in, and continue to engage in numerous acts, which, in whole or in part, were in retaliation for Jackson filing/participating in the FLSA Lawsuit. Such conduct of Defendants violates 29 U.S.C. § 215(a)(3).

104.    Such retaliatory acts include false accusations and wrongful actions by Staneart, individually and on behalf of TLI, which were intended by Plaintiffs to result in the wrongful prosecution of Jackson by the law enforcement.

105.    Additionally, in retaliation for Jackson filing/participating in the FLSA Lawsuit, Staneart, individually and on behalf of TLI, intentionally, maliciously, and in bad faith, interfered with Plaintiffs' business operations, including false advertising, false endorsement false association, and/or cyberpiracy as described in more detail above.

106.    Staneart has admitted that he engaged in retaliatory conduct against Jackson because he was "mad" and "angry" about the FLSA Lawsuit.

107.    The aforementioned conduct resulted, and continues to result, in damages to Jackson. Jackson seeks injunctive relief prohibiting Defendants and/or any third party acting on it/his/their behalf in engaging in future retaliatory conduct against Jackson and any and all companies owned or operated by Jackson. Jackson seeks all damages allowed for FLSA Retaliation.

108.    All FLSA Retaliation claims herein are based on acts and/or omissions by Staneart and/or TLI occurring and/or continuing to occur after the date of the settlement agreement in the FLSA Lawsuit (April 11, 2016).

## V.    <u>JURY DEMAND</u>

109.    Plaintiffs demand a jury trial.

## VI.    <u>DAMAGES AND PRAYER</u>

110.    Plaintiffs ask that the Court issue a summons for Defendants to appear and answer, and that Jackson and/or Magnovo be awarded a judgment against TLI and/or Staneart for the following:

a.  Statutory damages and/or economic damages;

b.  Non-economic damages;

c.  Injunctive Relief;

d.  Punitive and/or exemplary damages;

e.  All available statutory damages;

f.  Pre-judgment and/or post-judgment interest;

g.  Costs;

h.  Reasonable attorney's/attorneys' fees; and

i.  All other relief to which Jackson and/or Magnovo are entitled pursuant to the claims asserted and/or facts presented in this lawsuit.

Date: April 4, 2017.


**[SIGNATURE PAGE FOLLOWS]**

Respectfully submitted,


By:     s/ Allen Vaught
        Allen R. Vaught
        TX Bar No. 24004966
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFFS